# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Dublin Division

| | |
|---|---|
| In the matter of: ) | |
| ) | Chapter 7 Case |
| DEBRA R. SHEFFIELD, ) | |
| ) | Number <u>13-30076</u> |
| *Debtor.* ) | |
| ) | |
| ——————————————— ) | |
| ) | **FILED** |
| Todd Boudreaux, ) | Lucinda B. Rauback, Clerk |
| ) | United States Bankruptcy Court |
| *Trustee/Objecting Party,* ) | Savannah, Georgia |
| ) | By dreese at 12:35 pm, Mar 07, 2014 |
| Debra R. Sheffield, ) | |
| ) | |
| *Debtor/Respondent.* ) | |
| ——————————————— ) | |

## <u>OPINION AND ORDER SUSTAINING TRUSTEE'S OBJECTION TO DEBTOR'S AMENDED CLAIM OF EXEMPTIONS</u>

Before the Court is an objection to the debtor's claim of exemption in an annuity filed by Todd Boudreaux, the chapter 7 trustee ("<u>Trustee</u>"). Trustee's objection requires the Court to revisit the Supreme Court of Georgia's opinion in *Silliman v. Cassell*, 738 S.E.2d 606, 612 (Ga. 2013). In *Cassell*, the Georgia Supreme Court answered certified questions from the United States Court of Appeals for the Eleventh Circuit regarding whether a certain single-premium fixed annuity was an "annuity" within the meaning of Georgia's exemption statute at O.C.G.A. § 44-13-100(a)(2)(E). The *Cassell* court held that the National Life Insurance Company annuity was such an annuity, and the the court of appeals adopted this answer in *Silliman v. Cassell (In re Cassell)*, 713 F.3d 81 (11th Cir. 2013). In this case,

the Court must apply the analysis and holding of the Georgia Supreme Court in its *Cassell* opinion to the Jackson National Life Insurance Company annuity at issue in this case ("Annuity"). This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court has jurisdiction pursuant to 28 U.S.C. § 1334. In accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure, I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

A. <u>Procedural History</u>

As originally filed, Debra R. Sheffield's ("Debtor") Schedule C stated that the Annuity was exempt pursuant to § 44-13-100(a)(2.1) of the Official Code of Georgia ("Georgia Code").[1] (Dckt. 1, at 13.) Trustee filed his first objection to Debtor's claim of exemption in the Annuity on April 11, 2013. (Dckt. 29.) Trustee's initial objection was based on the broad assertion that "[u]nless and until the Debtor can produce sufficient documents to establish a right to claim exemptions in the above-listed assets, the Trustee requests the Court deny those claims of exemptions." (Dckt. 29, ¶ 6.) A hearing on Trustee's objection was held on July 9, 2013. (Dckt. 55.) No testimony was taken at the hearing, but Trustee advised the Court that if the requested documents proved the Annuity was a rollover into an IRA, he would withdraw his objection. Subsequently, Trustee obtained the contract for the Annuity and filed a Brief in Support of Trustee's Objection to Claim of Exemptions on

---

[1] Section 44-13-100(a)(2.1) of the Georgia Code contains four subsections (A through D), but Debtor's Schedule C, as originally filed, did not specify a particular subsection.

August 27, 2013. (Dckt. 56.) On September 5, 2013, Debtor amended her Schedule B and Schedule C. (Dckt. 57.) Debtor's Amended Schedule C states that the Annuity is exempt pursuant to O.C.G.A. § 44-13-100(a)(2)(E), § 18-4-22, and § 47-2-332. (Dckt. 57, at 4.) Debtor then filed a responsive brief. (Dckt. 58.)

Trustee timely filed an objection to Debtor's now amended claim of exemptions on September 10, 2013 (Dckt. 60.) The Court held a status conference on Trustee's objection on November 12, 2013. (Dckts. 69, 71.) At the status conference, Trustee indicated his belief that no evidentiary hearing was needed and that the parties could stipulate to the material facts.[2] (Dckt. 71.) Accordingly, on December 8, 2013, Trustee and Debtor filed their Joint Stipulation of Chapter 7 Trustee and Debtor on Trustee's Objection to Exemptions ("Joint Stipulation").[3] (Dckt. 72.)

---

[2] In accordance with Rule 9014 of the Federal Rules of Bankruptcy Procedure, the Court finds that an evidentiary hearing is not required in this contested matter. *See Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz)*, 341 B.R. 371, 381 (B.A.P. 1st Cir. 2006) ("Where the parties do not request an evidentiary hearing or where the core facts are not disputed, the bankruptcy court is authorized to determine contested matters . . . on the pleadings and arguments of the parties, drawing necessary inferences from the record."); *Wilmington Trust Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R. 470, 479 (S.D.N.Y. 2013) ("It is unnecessary to conduct an evidentiary hearing on a contested matter unless there are disputed issues of material fact that a Bankruptcy Court cannot decide based on the record.").

[3] The Joint Stipulation is a two-page document, containing thirteen numbered paragraphs. The parties had the opportunity but declined to more fully develop the facts in the record by presenting evidence at the July 9, 2013 hearing as well as by requesting an evidentiary hearing be set at the November 12, 2013 status conference.

B.  Stipulated Facts

Debtor and Trustee stipulated to the following facts. On March 7, 2013, Debtor filed a chapter 7 bankruptcy petition in the Southern District of Georgia. (Joint Stipulation, dckt. 72, ¶ 1.) Trustee was the duly appointed chapter 7 trustee for Debtor's case. (*Id.*, ¶ 2.) Trustee timely objected to Debtor's claim of exemptions. (*Id.*, ¶ 3.)

Debtor was born on November 21, 1964 and was 48 years old when she filed her bankruptcy petition. (*Id.*, ¶ 4.) Debtor is an employee of Colony Bank and has worked at that bank for twenty years. (*Id.*, ¶ 5.)

On December 2, 2008, Debtor obtained a Jackson National Life Perspective L. Series Fixed and Varied Annuity ("Annuity," "Contract," or "Annuity Contract"). (*Id.*, ¶ 6.) The Annuity was funded by making a single payment. Debtor accumulated the funds used for that payment by making deposits into a traditional Individual Retirement Account ("IRA") over a period of years while working for a previous employer. Debtor intended to "roll over" from the IRA the total value of that account ($9,728.72) to fund the purchase of the Annuity within a new, traditional IRA account. (*Id.*, ¶ 7.) Debtor has not contributed any additional funds to the Annuity other than the funds previously held in the IRA. (*Id.*, ¶ 8.) At the petition date, the Annuity had death proceeds and a cash value of about $16,779.66. (*Id.*, ¶ 9.) Debtor is the sole owner of the Annuity. (*Id.*, ¶ 10.) The Annuity was issued at the time Debtor was 44 years old. (*Id.*, ¶ 11.) The Annuity includes the following terms:

      a. Income Date (as defined by the Annuity): December 2, 2054; and
      b. Fixed Account Minimum Interest Rate (as defined by the Annuity): 2.00% in the first 10 Contract Years, 3.00% thereafter.

(*Id.*, ¶ 12.) When Debtor purchased the Annuity, she intended it to be a protected retirement account, specifically a traditional IRA. (*Id.*, ¶ 13.)

### C.    Contract Language

In addition to the stipulated facts above, the Court makes these additional findings of fact based on the Contract itself. Presumably in response to a subpoena sent by Trustee (dckt. 45), Jackson National Life Insurance Company produced the Contract entered into between the company and Debtor relating to the Annuity, which was attached to Trustee's brief as Exhibit "B."[4] (Dckt. 56-2.) The data pages of the Contract include the following statement: "The Contract Options You have selected will be detailed in a confirmation sent to You by the Company on or after the Issue Date." (Dckt. 56-2, at 8.) This "confirmation" of the Contract's options is not part of the record. As a result, Debtor's initial elections are not apparent other than those contained in the data pages of the Contract. However, the Contract provisions reflect Debtor's ability to freely amend these options. Therefore, the omission of this information is not fatal to Trustee's objection.

---

[4] At the November 12, 2013 hearing on Trustee's objection, the Court informed the parties that the Contract had not yet been made part of the record. In response, counsel for both parties informed the Court that a copy of the Contract was attached to their respective briefs (dckts. 56, 58). Therefore, I find that the parties have stipulated to the admission of the Contract into evidence for purposes of Trustee's objection.

According to the Contract, Debtor is both the "Owner" and "Annuitant." Owner is defined in part as "[t]he person or entity shown on the Contract Data Page who is entitled to exercise all rights and privileges under this Contract." (Dckt. 56-2, at 11.) Annuitant is defined in part as "[t]he natural person on whose life annuity payments for this Contract are based." (Dckt. 56-2, at 9.) Kim Sheffield, identified in the Contract as Debtor's spouse, is the "Beneficiary" under the Contract. (Dckt. 56-2, at 3.) Beneficiary is defined as "[t]he person(s) or entity(ies) designated to receive any Contract benefits upon the death of the Owner." (Dckt. 56-2, at 9.) Income Date is defined as "[t]he date on which annuity payments are to begin." (Dckt. 56-2, at 10.) According to the Joint Stipulation and the data pages of the Contract, the Income Date is December 2, 2054. (Dckt. 56-2, at 3; Dckt. 72, ¶ 12.) On that date, Debtor will be ninety years old. In addition to defining those terms, the Contract provides the following provisions relating to the terms "Annuitant," "Assignment," "Beneficiary," and "Income Date":

> **ANNUITANT.** The Owner may change the Annuitant at any time prior to the Income Date . . . .
>
> **ASSIGNMENT.** The Owner may assign this Contract before the Income Date, but the Company will not be bound by an assignment unless it is in writing and has been accepted and recorded at the Company's Service Center. . . .
>
> **BENEFICIARY.** The individual(s) or entity(ies) designated by the Owner to receive any amount payable under this Contract upon the Owner's death or upon the death of the Annuitant on or after the Income Date pursuant to the terms of this Contract. . . . The original Beneficiary(ies) will be shown on the Contract Data Page. . . . The Owner may change the Beneficiary(ies) by submitting a written request to the Service Center, unless an irrevocable beneficiary designation was previously filed with the Company. . . .
>
> . . . .

> **INCOME DATE.** If no Income Date is selected, the Income Date will be the Latest Income Date. At any time at least seven days prior to the Income Date then indicated on the Company's records, the Owner may change the Income Date to any date later than the Income Date currently on record by written notice to the Service Center, subject to the Latest Income Date.

(Dckt. 56-2, at 13, 28.)

The Contract allows the Owner (or Beneficiary if applicable) to elect to receive a lump-sum payment. That distribution, however, may be deemed a withdrawal. (Dckt. 56-2, at 28.) Otherwise, the Owner may elect among several annuity-type income options, which include life income, joint and survivor life income, life annuity with 120 or 240 monthly payments guaranteed, or income for a specific period. (Dckt. 56-2, at 28–29.) The Owner appears to have the ability to change the option selected:

> The Owner may, upon prior written notice to the Company at Its Service Center, elect an income option at any time prior to the Income Date or change an income option up to seven days before the Income Date. Unless otherwise designated, the Owner will be the payee.

(Dckt. 56-2, at 28.) The Contract's default option is a life annuity with 120 monthly payments guaranteed. (*Id.*)

In another section, the Contract provides its withdrawal provisions:

> At or before the Income Date, the Owner may withdraw all or part of the amounts under this Contract by informing the Company at the Service Center. For full withdrawal, this Contract, or a completed Lost Contract Affidavit, must be returned to the Service Center.

(Dckt. 56-2, at 19.) Certain withdrawals appear to be subject to a Withdrawal Charge and an Excess Interest Adjustment. (Dckt. 56-2, at 19.) According to the data pages of the Contract,

the applicable Withdrawal Charge rate is 0% because over four years have passed since Debtor made her initial and only premium payment. (Dckt. 56-2, at 6.) Debtor may make withdrawals without penalty under the following circumstances: (1) if the withdrawal is not more than ten percent of the premiums that remain subject to withdrawal charges that have not been previously withdrawn less the excess of the contract value over remaining premiums (dckt. 56-2, at 20); (2) if the owner incurs a terminal illness (dckt. 56-2, at 20); (3) if the owner incurs a heart attack, stroke, coronary artery surgery, life-threatening cancer, renal failure, or Alzheimer's disease (dckt. 56-2, at 22); or (4) if the owner requires inpatient care at a nursing home or hospital for 90 days or longer (dckt. 56-2, at 23).

## CONCLUSIONS OF LAW

The Bankruptcy Code permits a debtor to exempt certain assets from the bankruptcy estate, including certain retirement accounts, to further the Code's fresh start policy. *Wallace v. McFarland (In re McFarland)*, 500 B.R. 279, 283 (Bankr. S.D. Ga. 2013) (Barrett, J.); *see also Law v. Siegel*, No. 12-5196, slip op. 1–2, 2014 WL 813702, at *2 (U.S. Mar. 4, 2014). Trustee, as the objecting party, bears the burden to prove by a preponderance of the evidence that the claim of exemption in the Annuity is improper. Fed. R. Bankr. P. 4003(c); *In re Mooney*, No. 13-10835-JDW, 2014 WL 32388, at *1 (Bankr. M.D. Ga. Jan. 3, 2014); *Silliman v. Cassell*, 738 S.E.2d 606, 612 (Ga.), *adopted by Silliman v. Cassell (In re Cassell)*, 713 F.3d 81 (11th Cir. 2013).

Georgia "opted out" of the federal exemptions provided for in § 522(d) of the Bankruptcy Code. Therefore, Georgia debtors are only permitted to exempt property under state law or federal law other than Bankruptcy Code § 522(d). Georgia's bankruptcy specific exemptions are set forth in O.C.G.A. § 44-13-100.

A. Exemption Under O.C.G.A. § 44-13-100

Debtor's main argument is that the Annuity is exempt under O.C.G.A. § 44-13-100(a)(2).[5] In response, Trustee argues that Debtor may not claim an exemption in the Annuity pursuant to O.C.G.A. § 44-13-100(a)(2) because the Annuity falls outside the scope of retirement plans exempted by that statute. Section 44-13-100 of the Georgia Code provides that "(a) . . . any debtor who is a natural person may exempt . . . the following property: . . . (2) The debtor's right to receive: . . . (E) A payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor . . . ." O.C.G.A. § 44-13-100(a)(2)(E).

---

[5] As a preliminary matter, subsection D of O.C.G.A. § 44-13-100(a)(2.1) permits debtors to exempt their aggregate interest in an IRA. *See* O.C.G.A. § 44-13-100(a)(2.1)(D). Because Debtor amended her Schedule C to remove O.C.G.A. § 44-13-100(a)(2.1), she has withdrawn her claim that the Annuity is exempt because it is an IRA. This finding is consistent with Debtor's Amended Schedule B that lists the Annuity under the "Annuities" Type of Property section rather than the "Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans" Type of Property section where she claimed an exemption in her 401(k) worth $65,713.72. (*See* dckt. 57, at 1–2.) Debtor acknowledged that, although it was her *intention* to have the Annuity held as an IRA, she failed to properly make that election. (*See* Joint Stipulation, dckt. 72, ¶¶ 7, 13.)

In response to certified questions from the Eleventh Circuit Court of Appeals, the Supreme Court of Georgia recently articulated the elements of a claim of exemption in an annuity pursuant to O.C.G.A. § 44-13-100(a)(2):

> To be exempt under this provision, the [annuity] must meet three requirements: (1) it must be an annuity; (2) the right to receive the annuity payments must be on account of illness, disability, death, age, or length of service; and (3) the payments must be reasonably necessary to support [Debtor] or her dependents.

*Cassell*, 738 S.E.2d at 609 (footnote omitted) (internal quotation marks omitted).

When interpreting a statute, its plain meaning controls unless its literal application will "produce a result demonstrably at odds" with legislative intent. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989); *see also Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 132 S. Ct. 1670, 1680 (2012). For purposes of O.C.G.A. § 44-13-100(a)(2)(E), "an annuity is an obligation to pay an amount at regular intervals for a certain or uncertain period of time." *Cassell*, 738 S.E.2d at 610. However, the *Cassell* court noted:

> If we were to apply only this definition of annuity for purposes of O.C.G.A. § 44-13-100(a)(2)(E), every annuity regardless of its origin or purpose would be exempt from a debtor's bankruptcy estate and protected from creditors. We do not believe this is the result intended by our legislature when it adopted O.C.G.A. § 44-13-100(a)(2)(E).

*Id.* A review of the caselaw reveals that "[c]ourts have limited the scope of the exemption to mean that a debtor's interest in an annuity may qualify for the exemption if it is intended to 'provide income that substitutes for wages,' and if it is not a typical savings account." *McFarland*, 500 B.R. at 284 (quoting *Rousey v. Jacoway*, 544 U.S. 320, 331

(2005)). Therefore, the "pertinent question is whether [the Annuity] provides income as a substitute for wages." *Cassell*, 738 S.E.2d at 610.

The Supreme Court of Georgia provided the following guidance for how to determine when income provides a substitute for wages:

> To make this determination, courts must consider the nature of the contract giving rise to the annuity, as well as the facts and circumstances surrounding the purchase of the annuity. . . . In *Andersen*, an opinion often cited by courts when determining whether a plan or contract is of the type exempt from the bankruptcy estate, the court similarly found no single factor determinative. The court instead considered a variety of factors . . . .

*Id.* at 610–11 (citations omitted). Being mindful that Trustee bears the burden of proof in this case, the Court will now apply the factors considered by the United States Bankruptcy Appellate Panel for the Eighth Circuit in *Anderson v. Ries (In re Andersen)*, 259 B.R. 687, 691–92 (B.A.P. 8th Cir. 2001), to the facts in this contested matter.

*1.* "Were the payments designed or intended to be a wage substitute?" *Andersen*, 259 B.R. at 691.

Overall, this factor weighs in favor of Trustee. The Contract defines "Income Date" as "[t]he date on which annuity payments are to begin." (Dckt. 56-2, at 10.) The Income Date of the Annuity is December 2, 2054. (Dckt. 56-2, at 3.) Debtor was born on November 21, 1964. (Dckt. 72, ¶ 4.) Focusing on the Contract's terms under Debtor's current elections, it appears that she will not receive any income from the Annuity until she is ninety years old. (*See* dckt. 56-2, at 3, 10). Debtor's choice to defer any and all payments under the Annuity until she is ninety years old shows that the

11

Annuity was intended to be more like an investment and less like an exemptible contract to provide retirement funds. *See McFarland*, 500 B.R. at 285 (finding that the debtor made clear that he did not intend for an annuity to serve as a replacement for wages because he elected to defer payments the maximum number of years); *cf. Cassell*, 738 S.E.2d at 608 (finding that an annuity provided income as a substitute for wages where the annuity gave the debtor the immediate right to payments and the debtor testified that "she purchased the annuity to replace her income given her age at the time of purchase, 65, and to support her in her retirement").

> 2. "Were the contributions made over time? The longer the period of investment, the more likely the investment falls within the ambit of the statute and is the result of a long standing retirement strategy, not merely a recent change in the nature of the asset." *Andersen*, 259 B.R. at 691.

This factor weighs slightly in Debtor's favor. On one hand, Debtor only made a single contribution to purchase and fund the Annuity, suggesting that the contributions to this annuity were not made over time. On the other hand, the funds used for that single contribution are directly traceable to contributions that Debtor made over time into a traditional IRA. Although not determinative, courts have considered it "significant" that the funds used to purchase an annuity came from employment-related retirement funds. *See Cassell*, 738 S.E.2d at 611 n.4 ("For example, in *In re Vickers*, 408 B.R. 131, 140–42 (Bankr. E.D. Tenn. 2009), the court considered significant the fact that the annuity for which an exemption was claimed was purchased with funds held within and obtained directly from a self-employed IRA fund; *see also In re Kiceniuk*, No.

12-17802 (RTL), 2012 WL 4506597 (Bankr. D.N.J. Sept. 28, 2012) (annuity funded by the transfer of monies from the debtor's employment related 401(k) to which she contributed regularly).").

    3.    "Do multiple contributors exist? Investments purchased in isolation, outside the context of workplace contributions, may be less likely to qualify as exempt." *Andersen*, 259 B.R. at 691.

Under the facts of this case, this factor is similar to the one above and, likewise, weighs slightly in favor of Debtor. This is because, although the actual purchase of the Annuity took place outside of the workplace, the funds used were directly traceable to contributions she made from earnings to fund a traditional IRA while working for a former employer. (*See* dckt. 72, ¶ 7.)

    4.    "What is the return on investment? An investment which returns only the initial contribution with earned interest or income is more likely to be a nonexempt investment. In contrast, investments which compute payments based upon the participant's estimated life span, but which terminate upon the participant's death or the actual life span, are akin to a retirement investment plan. That is, will the debtor enjoy a windfall if she outlives her life expectancy? Is she penalized if she dies prematurely?" *Andersen*, 259 B.R. at 691.

Overall, this factor weighs in Trustee's favor. Because no testimony was taken or relevant facts stipulated to, the Court will not opine about the return on investment of the Annuity Contract. Despite the availability of annuity-type options, Debtor currently retains the ability to wait until she is ninety years old to receive any payments, and at that time, she may elect to receive a lump-sum payment rather than

annuity payments that take into account her life expectancy. For this reason, the Annuity appears to be much more like an investment rather than a contract to provide retirement benefits.

> 5. "What control may the debtor exercise over the asset? If the debtor has discretion to withdraw from the corpus, then the contract most closely resembles a nonexempt investment." *Andersen*, 259 B.R. at 691 (footnote omitted).

Of all of the factors considered, this factor weighs most heavily in favor of Trustee. The Court finds that this factor is also the most significant factor under consideration in light of the facts of this case. Debtor's control is readily apparent due to her discretion to change the timing and frequency of the annuity income and the beneficiary of death benefits. Debtor's control over the Annuity supports the finding that the Annuity does not serve as a wage substitute. *See Goodman v. Bramlette (In re Bramlette)*, 333 B.R. 911, 921 (Bankr. N.D. Ga. 2005) (holding that annuity was not exempt where the debtor retained discretion to withdraw from the corpus and to decide at later date to receive a fixed return on its investment); *In re Michael*, 339 B.R. 798, 805 (Bankr. N.D. Ga. 2005) (holding that annuity was not exempt where the debtor retained the authority to surrender, assign, or amend the annuity at any time and to exercise any right and receive any benefit under the contract).

> 6. "Was the investment a prebankruptcy planning measure? In this regard, the court may examine the timing of the purchase of the contract in relation to the filing of the bankruptcy case." *Andersen*, 259 B.R. at 692.

This factor weighs heavily in favor of Debtor. Debtor obtained the Annuity

on December 2, 2008 but did not file her bankruptcy petition until March 7, 2013. (Dckt. 72, ¶¶ 1, 6.) The fact that she obtained the Annuity over fours years before she filed for bankruptcy tends to show that the investment was not a prebankruptcy planning measure. Furthermore, Trustee presented no evidence to indicate that the Annuity's purchase was part of a prebankruptcy scheme, and he bears the burden of proof.

After considering these factors, I conclude that the Annuity falls outside the scope of "annuity" for purposes of O.C.G.A. § 44-13-100(a)(2) because it does not provide income as a substitute for wages. In further support of my decision in this case, I note that the Annuity is analogous to the annuities that the bankruptcy courts analyzed and found nonexempt in *Bramlette* and *McFarland*. In *Bramlette*, the United States Bankruptcy Court for the Northern District of Georgia concluded that an annuity was not "an exempt 'pension, annuity, or similar plan or contract' under O.C.G.A. § 44–13–100(a)(2) because it was not a contract to provide benefits in lieu of earnings after retirement or a plan created to fill or supplement a wage or salary void." *Bramlette*, 333 B.R. at 921. The *Bramlette* court found the following facts relevant to that determination:

> Although the debtor purchased the annuity in contemplation of her retirement, she made only one contribution shortly before the filing of her bankruptcy case, has discretion to withdraw from the corpus, and currently has the option to decide at a later time to receive a fixed return on her investment. The circumstances clearly demonstrate that the purchase of the annuity was a recent change in the nature of her assets rather than the result of a long standing retirement strategy.

*Id.* More importantly, I find that the post-*Cassell* case, *McFarland*, provides the greatest caselaw support for my conclusion that the Annuity falls outside the scope of retirement

funds exemptible under O.C.G.A. § 44-13-100(a)(2). *See McFarland*, 500 B.R. at 285–86 (finding that an annuity did not fall within the scope of O.C.G.A. § 44-13-100(a)(2) where the annuity contract's terms were essentially identical to those of the Contract at issue in this case, including that certain early withdrawals were subject to charges). In that case, my colleague, Judge Barrett, explained that "the Georgia legislature weighted the fresh start concept against creditors' needs when it adopted the exemptions." *Id.* at 286 (internal quotation marks omitted). As a result, not every investment account is exempt in a bankruptcy case. The Annuity is among those chosen by the Georgia legislature to be nonexempt.

Because I find the Annuity does not qualify as an annuity for purposes of O.C.G.A. § 44-13-100(a)(2)(E), I decline to decide whether Debtor's right to receive payments under the annuity is on account of illness, disability, death, age, or length of service and whether the payments are reasonably necessary to support the Debtor and her dependents.

B. <u>Exemption Under Other Georgia Code Sections</u>

In her Amended Schedule C, Debtor also claims that the Annuity is exempt pursuant to O.C.G.A. § 18-4-22 and § 47-2-332. Trustee argues in his objection that Debtor cannot exempt the Annuity under O.C.G.A. § 18-4-22 because the Annuity was not established under section 408 or 408(A) of the Internal Revenue Code as required by that statute. Likewise, Trustee contends that Debtor cannot exempt the Annuity under

O.C.G.A. § 47-2-332 because she is not a former employee of the State of Georgia and the account for the Annuity was not established in the manner required by that statute.

Section 18-4-22 of the Georgia Code makes certain pension and retirement accounts exempt from garnishment. *See In re McFarland*, 481 B.R. 242, 254 (Bankr. S.D. Ga. 2012) (Barrett, J.) ("Georgia Code sections exempt[] from garnishment 'funds or benefits from a pension or retirement program as defined in 29 U.S.C. § 1002(2)(A) or funds or other benefits from an individual retirement account' but only 'until paid or otherwise transferred to a member of such program.'" (quoting O.C.G.A. § 18–4–22(a))). The other statute cited by Debtor, O.C.G.A. § 47-2-332, relates to the "right to a pension, annuity, retirement allowance, return of contributions, the pension, annuity, or retirement allowance itself, any optional benefit, or any other right accrued or accruing to any person" under the Employees' Retirement System of Georgia. O.C.G.A. § 47-2-332(a).

Under the Bankruptcy Code, a Georgia-domiciled debtor is limited to the exemptions found in O.C.G.A. § 44-13-100. *In re McFarland*, 481 B.R. at 255; *see also In re Joyner*, 489 B.R. 292, 297 (Bankr. S.D. Ga. 2012) (Davis, J.). The sole exception to that rule was identified in *In re Fullwood*, 446 B.R. 634 (Bankr. S.D. Ga. 2010) (Davis, J.). In *In re Fullwood*, the bankruptcy court held that O.C.G.A. § 34-9-84 applied in bankruptcy cases and exempted the debtor's workers' compensation recovery because (1) workers' compensation awards were protected long before the Georgia bankruptcy

exemptions were created in 1980 and (2) O.C.G.A. § 44-13-100 does not address workers' compensation awards. *See Roach v. Ryan (In re Ryan)*, No. 11-40712, 2012 WL 423864, at *1 (Bankr. S.D. Ga. Jan. 19, 2012) (Davis, J.). In contrast, O.C.G.A. § 44-13-100 specifically addresses what types of annuities and similar contracts are exempt in bankruptcy cases. Therefore, Debtor's attempt to exempt the Annuity under O.C.G.A. § 18-4-22 and § 47-2-332 must fail even if the Annuity met the requirements of those statutes (which appears not to be the case in any event).

ORDER

For the foregoing reasons, Trustee's Objection to Debtor's Amended Claim of Exemptions (dckt. 60) is SUSTAINED.

Dated at Savannah, Georgia, this 7th day of March, 2014.

Edward J. Coleman, III
United States Bankruptcy Judge